In the Matter of Proving the Last Will and Testament of ARTHUR HENRY GAFFKEN, Deceased.

MARY LOUISE GAFFKEN, Appellant;    JOHN C. BORGES, Respondent.

Second Department, June 10, 1921.

Wills — will made in 1914 with devises to woman whom decedent subsequently married and to another but with no provision as to issue — death of testator in 1920 leaving widow and child — will not revoked by subsequent marriage — Decedent Estate Law, § 35, as amended by Laws of 1919, chapter 293, applicable.

Testator executed his will in 1914 by which he gave one-third of his estate to the woman who two days later became his wife, and two-thirds to his mother, and in 1920 died leaving him surviving his widow and one son. *Held*, that section 35 of the Decedent Estate Law, as amended by chapter 293 of the Laws of 1919, providing that if after the making of any will such testator marries, and the husband or wife, or any issue of such marriage, survives the testator, such will shall be deemed revoked as to them unless provision is made for them, or they are mentioned in such way as to show an intention not to make such provision, applies in determining the meaning and effect of the will;

That the will may be read as having provided for the widow by the antenuptial bequest and, therefore, it was not revoked as to her by the testator's subsequent marriage.

APPEAL by the contestant, Mary Louise Gaffken, from a decree of the Surrogate's Court of Kings county, entered in the office of the clerk of said court on the 21st day of February, 1921, admitting to probate the paper propounded as the last will and testament of Arthur Henry Gaffken.

The main question turns on the change in the Decedent Estate Law (§ 35, as amd. by Laws of 1919, chap. 293) as to the effect of a marriage of the testator and birth of a son after execution of a will.

*Herbert Parsons*, for the appellant.

*Harry W. Kouwenhoven*, for the respondent.

PUTNAM, J.:

On June 12, 1914, testator made the will probated, in which he gave one-third of his estate to Mary Louise Krom, and

Second Department, June, 1921. [Vol. 197

the remaining two-thirds to his mother, Adelheid Gaffken, and appointed executors. On June fourteenth (two days later) he married this Mary Louise Krom, to whom on February 3, 1916, was born the son, William Eugene. Testator died December 10, 1920, leaving as surviving his mother, wife and son. No question is made as to the son, since he stands with the full rights as if the father died intestate.

Before September 1, 1919, there survived in New York an old distinction between husband and wife as to revocation of wills. As to a man, his marriage with birth of issue, worked an inferential revocation of a will executed before marriage. (Decedent Estate Law, § 35; re-enacting R. S. pt. 2, chap. 6, tit. 1, art. 3 [2 R. S. 64], § 43.) As to an unmarried woman, marriage alone revoked a prior will. (Decedent Estate Law, § 36; re-enacting R. S. pt. 2, chap. 6, tit. 1, art. 3 [2 R. S. 64], § 44; *Forse & Hembling's Case*, 4 Coke Rep. 61.) This disparity was removed in England by the Statute of Wills (7 Wm. IV & 1 Vict. chap. 26, § 18, taking effect in 1838). (See 3 Jarman Wills [Am. ed. 1881], p. 783.) This sex equality as to revocation did not have full recognition in New York until 1919. The essential difference, however, is the effect of this inferential revocation. The earlier authorities regarded marriage and issue (or without issue, in case of a woman) as countermanding the entire will. Thus in *Forse & Hembling's Case* (*supra*) the court said: " This taking of husband being, in the case at bar, her proper act, shall amount to a countermand in law." (61 b.)

The history of the gradual recognition of the doctrine of a presumed revocation is shown in *Brush* v. *Wilkins* (4 Johns. Ch. 506).

By the law in force in 1912 (Decedent Estate Law [Consol. Laws, chap. 13; Laws of 1909, chap. 18], § 35), which took effect on February 17, 1909, revocation was inferred from marriage and birth of issue " unless provision shall have been made for such issue by some settlement, or unless such issue shall be provided for in the will, or in such way mentioned therein, as to show an intention not to make such provision." The 1919 amendment with more exact discrimination left only a partial revocation. (Laws of 1919, chap. 293.) It read:

" § 35. Revocation by marriage. If after making any will, such testator marries, and the husband or wife, or any issue of such marriage, survives the testator, such will shall be deemed revoked as to them, unless provision shall have been made for them by some settlement, or they shall be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and such surviving husband or wife, and the issue of such marriage, shall be entitled to the same rights in, and to the same share or portion of the estate of said testator as they would have been, if such will had not been made. No evidence to rebut such presumption of revocation shall be received, except as herein provided." This act of 1919 also repealed section 36 of the Decedent Estate Law, which provided that " A will executed by an unmarried woman, shall be deemed revoked by her subsequent marriage."

Mrs. Gaffken, the appellant, would naturally benefit under the earlier wording of section 35, in force when the will was executed. The will did not provide for issue, and made no mention thereof, and showed no intention to disinherit. This would lead to a complete revocation according to the earlier statute.

By act of 1919 this is otherwise, because the will may be read as having provided for the widow, by the ante-nuptial bequest.

Which law prevails — the statute in force at time the will is executed, or that at testator's death?

Although a will is ambulatory, so long as the testator lives, and only becomes effective at his death (*Voluntas est ambulatoria usque extremum vitae exitum*), there is respectable authority for the view that the law in force at time of execution controls the requirements of formalities and attestation. (*Packer* v. *Packer*, 179 Penn. St. 580.)

But for the meaning and effect of the will we are to look to the law at time of the testator's death. (*Wynne's Lessee* v. *Wynne*, 2 Swan [Tenn.], 405 [1852]; *Price* v. *Taylor*, 28 Penn. St. 95, 107; *Obecny* v. *Goetz*, 116 App. Div. 807, 808; *Matter of Cutler*, 114 Misc. Rep. 203; *Matter of Schuster*, 111 id. 534; *Lorieux* v. *Keller*, 5 Iowa, 196.) Otherwise new legislation would never begin to take effect until after the prior wills had been outlived.

Hence, I advise that the decree of the Surrogate's Court of Kings county be affirmed, with costs to all parties appearing, payable out of the estate.

BLACKMAR, P. J., MILLS, RICH and JAYCOX, JJ., concur.

Decree of the Surrogate's Court of Kings county affirmed, with costs to all parties appearing, payable out of the estate.