In the Matter of the Estate of EMMA JANE HOLMES, Also Known as EMMA J. C. HOLMES, Also Known as EMMA JANE COLE, Also Known as EMMA JANE YOUNG, Deceased.

Surrogate's Court, Kings County, April 27, 1933.

*John T. Bladen,* for the petitioner.

*Hurray & Dutton [John A. Dutton* of counsel], for the respondent Julia Eller.

WINGATE, S. An interesting question is herein presented respecting the law which is applicable in the determination of the validity of the testamentary document which is here presented for probate. The present decedent died on February 10, 1932, unmarried and without any child or descendant of a deceased child. Previous to 1884, she married Henry W. Cole, who died May 6, 1884. Ten years later, on March 23, 1894, she duly executed the propounded document. At that time she was still a widow. On July 11, 1901, she married William Holmes, who died at some undisclosed date prior to 1932.

At the time of the execution of the document in 1894, the provision of the Revised Statutes which became section 36 of the Decedent Estate Law in 1909 was still in effect. This read: " Will of unmarried woman. A will executed by an unmarried woman shall be deemed revoked by her subsequent marriage." This section was repealed by section 2 of chapter 293 of the Laws of 1919, which placed the spouses upon an equality in respect to the effect of marriage upon a previously executed testamentary document. The provision of the Decedent Estate Law pertinent in this regard was then made to read as follows:

" § 35. Revocation by marriage. If after making any will', such testator marries, and the husband or wife, or any issue of such marriage, survives the testator, such will shall be deemed revoked as to them, unless provision shall have been made for them by some settlement, or they shall be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and such surviving husband or wife, and the issue of such marriage, shall be entitled to the same rights in, and to the same share or portion of the estate of said testator as they would have been, if such will had not been made. No evidence to rebut such presumption of revocation shall be received, except as herein provided."

This section was subsequently amended by chapter 562 of the Laws of 1931, but the alterations then made have no materiality in the present determination.

The petition in the present proceeding prays in the alternative that this will of March, 1894, be admitted to probate and letters of administration with the will annexed granted, or, if it be determined that it was revoked by the marriage of the decedent to Holmes, that letters of administration on intestacy be awarded. The

question at issue concerns merely which of these two alternatives should be adopted. This in turn depends on whether, *first*, the marriage of the decedent to Holmes *eo instante* revoked the will executed in 1894, or *second*, whether the effect of the marriage, as an implied revocation, is to be determined by the law in existence when the effect of the document comes on for adjudication.

The rule of instant revocation on marriage was applied in *Brown* v. *Clark* (77 N. Y. 369, 373), decided in 1879, and the question of present pertinence is whether the change in public policy demonstrated by the alteration in the statutes in 1919 has resulted in a change in the law. That this has taken place seems obvious from an analysis of the result attained in *Matter of Gaffken* (114 Misc. 693; affd., 197 App. Div. 257; affd., 233 N. Y. 688).

. This case, which arose in this court in 1921, concerned the will of Arthur Henry Gaffken, which was executed in 1914. At the time of its execution the testator was unmarried and by his testamentary instrument he gave one-third of his estate to Mary Louise Kron and the balance to his mother, Adelheid Gaffken. Two days subsequent to the execution of the will he married Miss Kron, by whom he had a son, Eugene, born on February 3, 1916. He died on December 10, 1920, leaving both wife and son surviving.

At the time of his execution of the will, section 35 of the Decedent Estate Law read as follows: " Revocation by marriage and birth of issue. If after the making of any will, disposing of the whole estate of the testator, such testator shall marry, and have issue of such marriage, born either in his lifetime or after his death, and the wife or the issue of such marriage shall be living at the death of the testator, such will shall be deemed revoked, unless provision shall have been made for such issue by some settlement, or unless such issue shall be provided for in the will, or in such way mentioned therein, as to show an intention not to make such provision; and no other evidence to rebut the presumption of such revocation, shall be received."

As noted, this section was, in 1919, amended in the manner hereinbefore indicated.

Under the law existing at the time of the execution of the will by Gaffken, such an instrument was deemed revoked by his subsequent marriage and birth of issue unless provision had been made for the issue, in either the instrument itself, or by way of settlement. Under the law existing at his death, it was revoked in respect to wife or issue only if he had failed to make such provision for them, respectively. In other words, whereas previously the testator would have been deemed to have died intestate as to his entire property if he subsequently married and had issue, unless

the issue was provided for, under the later law such invalidity would be declared merely in favor of the wife or child for whom no provision had been made, and the balance of the instrument would stand.

The contention of the widow in the *Gaffken* case was that the applicable law was that which existed at the time the instrument was executed, and that since no provision had been made for issue therein, although the wife had been provided for, the will was completely revoked, and the entire estate passed as intestate property.

This court determined that this position was unsound, and that the law applicable to the case was that which existed at the time of the death of the decedent and not that which had been in effect when the will was executed. This was the sole issue in the case. (See 233 N. Y. 688, 689.) This determination was unanimously affirmed by the Appellate Division for this department (197 App. Div. 257), the court saying (at p. 259): "Although a will is ambulatory, so long as the testator lives, and only becomes effective at his death (*Voluntas est ambulatoria usque extremum vitæ exitum*), there is respectable authority for the view that the law in force at the time of execution controls the requirements of formalities and attestation. (*Packer* v. *Packer*, 179 Penn. St. 580.)

" But for the meaning and effect of the will we are to look to the law at the time of the testator's death. (*Wynne's Lessee* v. *Wynne*, 2 Swan [Tenn.], 405 [1852]; *Price* v. *Taylor*, 28 Penn. St. 95, 107; *Obecny* v. *Goetz*, 116 App. Div. 807, 808; *Matter of Cutler*, 114 Misc. 203; *Matter of Schuster*, 111 id. 534; *Lorieux* v. *Keller*, 5 Iowa, 196.) Otherwise new legislation would never begin to take effect until after the prior wills had been outlived."

Upon certification to the Court of Appeals, the decision of the Appellate Division was unanimously affirmed (233 N. Y. 688).

The foregoing comparatively recent decision conclusively demonstrates, therefore, that the present law of the State of New York is established to the effect that the validity of a testamentary document is to be determined by the law existing at the time of the death of the testator. Up to that moment there is in reality no will in existence since a will is an instrument, duly authenticated according to law, which provides for the disposition of property upon the death of the signator. It is, however, an instrument which can necessarily obtain validity for any purpose only upon the decease of its author.

Results similar to that of the *Gaffken* case have been attained by Surrogate FOLEY in *Matter of Dexter* (116 Misc. 17) and by Surrogate NOBLE in *Matter of Cutler* (114 id. 203).

This entire question may, however, be approached from yet another angle. By section 144 of the Surrogate's Court Act it is provided that a will executed in accordance with the requisite statutory formalities " *must* " be admitted to probate. In this regard the court has no discretion whatsoever. (*Matter of Davis*, 182 N. Y. 468, 475; *Matter of Webb*, 122 Misc. 129, 133; affd., 208 App. Div. 793; *Matter of Enright*, 138 Misc. 853, 856.) The legal effect of an instrument thus admitted is to be determined in a construction proceeding instituted especially for that purpose. Whereas, frequently, the construction of a will is closely connected with its admission to probate, such proceeding is nevertheless entirely separate and distinct from the former. (*Matter of Keleman*, 126 N. Y. 73, 78, 79; *Matter of Enright*, 138 Misc. 853, 855–858.)

The question of the effect of the instrument must, on primary principles, be decided in accordance with the law existing at the time the question arises. (Dec. Est. Law, § 47; *Cross v. United States Trust Co.*, 131 N. Y. 330, 342.)

It follows, therefore, that since the will at bar was validly executed in accordance with the statutes in force at the time the acts were performed, it must necessarily be admitted to probate. A primary duty then devolves upon this court of effectuating the testamentary intent therein disclosed unless such course is inhibited by some positive rule of law. (*Hartnett v. Wandell*, 60 N. Y. 346, 349; *Matter of Walsh*, (147 Misc. 281.) In the present instance there is no existing rule of law or public policy which prevents the adoption of this course, wherefore, it must be pursued.

Proceed accordingly.