In the Matter of the Estate of LOUISA P. STRICKLAND, Deceased.

Surrogate's Court, Kings County, December 18, 1939.

*Chester Baffa*, for the Brooklyn Trust Company, proponent.

*Garfield, Wrubel & Lazarus* [*Robert H. Wrubel* and *Herbert B. Lazarus* of counsel], for the contestants.

*Charles A. Clayton*, special guardian for infants.

WINGATE, S.   The situation disclosed in the present proceeding is the reverse of the familiar one in which a decedent has involved his estate in difficulties by an attempt to act as the artificer of his own will.   In such a case the complications are customarily caused by a failure to secure legal guidance.   The present indicates that perhaps there has been a superfluity thereof.

Stated in chronological order, the documents by which this decedent attempted to place her temporal affairs in  order were, *first,* the presently propounded will, dated December 22, 1928; *second,* an *inter vivos* trust agreement, dated November 18, 1930; *third,* the presently propounded codicil, dated December 10, 1930; *fourth,* a further modification of the trust agreement, dated April 10, 1933; *sixth,* an additional modification of the trust agreement,

dated January 10, 1934; and *seventh*, a new trust agreement, dated April 27, 1937.

It is the contention of the proponent that both the will and the codicil should be admitted to probate and that both are effective. The contestants assert that the codicil should be denied probate, or, in the alternative, should be declared ineffective. The petition and citation contained notice of the questions of construction to be propounded, and the court has entertained the petition in this respect, wherefore complete jurisdiction exists for a determination of the entire controversy.

No assertion has been made that either the will or codicil was not duly executed as required by section 21 of the Decedent Estate Law or that the testatrix lacked mental capacity or was subject to any restraint or undue influence, and these statutory prerequisites to admissibility to probate have been demonstrated to the satisfaction of the court. The admission to probate of both documents is, consequently, obligatory upon the court by reason of the mandatory directions of section 144 of the Surrogate's Court Act, which provides that under such circumstances the propounded instrument " *must* be admitted to probate." (Italics not in original.) This has uniformly been interpreted as according no discretionary authority whatsoever in this regard. (*Matter of Davis*, 182 N. Y. 468, 475; *Matter of Webb*, 122 Misc. 129, 133; affd., 208 App. Div. 793; *Matter of Enright*, 138 Misc. 853, 856; *Matter of Mihlman*, 140 id. 535, 538; *Matter of Ayres*, 141 id. 236, 237; *Matter of Mortensen*, 157 id. 717, 722.)

In this initial stage of the proceeding the terms or effect of the duly authenticated document are wholly immaterial. (*Matter of Merriam*, 136 N. Y. 58, 60; *Matter of Higgins*, 264 id. 226, 229; *Matter of Davis*, 182 id. 468, 475; *Matter of Hermann*, 178 App. Div. 182, 191; affd., 222 N. Y. 564; *Matter of Lally*, 210 App. Div. 757, 760, 761; *Matter of Holmes*, 147 Misc. 394, 398; *Matter of Tankelowitz*, 162 id. 474, 475; *Matter of Herle*, 169 id. 197, 200), and this is true even if their every item is invalid or ineffective. Such questions are capable of evaluation only in a proceeding for the interpretation of the terms of the instruments and adjudication respecting their validity and effect, which is commonly designated a proceeding for construction.

Obviously, probate must precede construction by reason of the fact that there is no will to construe until probate has been accomplished, and, under section 145 of the Surrogate's Court Act, authority for construction is accorded only to the court " in which such will was probated."

The will and codicil must, accordingly, be admitted to probate, and, this result having been attained, the court will proceed with

the question of construction which has been raised. This concerns merely the devolutionary effect of the codicil.

If the chronological sequence of the various documents executed by the testatrix, as hereinbefore noted, be recalled, it will be seen that the codicil was executed exactly twenty-two days after the execution of the original *inter vivos* trust agreement, which was dated November 18, 1930, and two years and four days after the execution of the will.

The codicil recites the making of the *inter vivos* trust " bearing date November 18, 1930," and reads:

" Whereas it was my intention and purpose to embody in, and dispose of by, that Deed of Trust and this Codicil all of my estate which had previously been disposed of by my Last Will and Testament, dated December 22, 1928, and

" Whereas it is my intention that my said Last Will and Testament shall be superseded by the said Deed of Trust and this Codicil, unless the said Deed of Trust shall not be in effect at the time of my decease."

The first item of the codicil thereupon gives to Brooklyn Trust Company all property which the testatrix may not have alienated during her life, to be held on the trusts described in the fourth, fifth and sixth items of her will, and continues:

" *Second.* In the event that at the time of my decease I shall not have exercised the right reserved by me to revoke the said Deed of Trust in full, then and in that event only I revoke so much of my said Last Will and Testament as shall not be necessary or required to give force and effect to this Codicil, without thereby reviving any prior Will of mine."

The " third " item authorizes Brooklyn Trust Company to " merge with the corpus of the trusts described in said Deed of Trust * * * all of the property disposed of by this Codicil and to administer the same as though the same had been received by them on November 18, 1930, in pursuance of the said Deed of Trust."

On April 27, 1937, the decedent and Brooklyn Trust Company entered into a new trust agreement, which recited that she conveyed to the latter the property specified in Schedule A attached thereto. Its first paragraph read: " I revoke, cancel and annul the Indenture of Trust executed, acknowledged and delivered by me to the Brooklyn Trust Company, under date of November 18th, 1930, and any amendments thereto."

It has been stipulated " that on May 5th, 1937, the Brooklyn Trust Company as Trustee under the deed of trust executed by Louisa P. Strickland and dated November 18th, 1930, duly assigned

and delivered to said Louisa P. Strickland all of the assets comprising the principal of said Trust of November 18th, 1930. The assignments of such part of said former trust estate as consisted of mortgages or interests therein were duly recorded in the proper Registers' Offices on May 14th, 1937."

It is further stipulated that on the succeeding day the decedent executed and delivered to the trustee assignments of the items of property designated as composing the trusts under the agreement executed on April 27, 1937, and that these were similarly recorded on May fourteenth.

It is the position of the trustee that this new trust agreement of 1937 was in reality a continuance of the trust created by the 1930 agreement. There is nothing in the record to demonstrate that fact. The principal contributions to the 1937 trust are not indentifiable from the schedule attached thereto as having formed parts of the principal of the 1930 trust. Even were the contrary the fact, however, the 1937 trust was not, as a matter of law, a continuance of the 1930 trust. The latter was expressly and unequivocally revoked by the first paragraph of the 1937 agreement and the securities held thereunder were redelivered to the decedent. There was unquestionably a continuity of intention on the part of the decedent to dispose of her property on death partly through the medium of a trust and partly by testamentary instrument, but this is the only continuity which can be deemed to exist.

After the execution of the 1930 agreement, had she died before December 10, 1930, her property would have devolved pursuant to that agreement and her 1928 will. Subsequent to that date, and prior to April 27, 1937, it would have passed under these two documents plus the codicil. Whether the effectiveness of the codicil survived the execution of the new trust agreement must depend upon the language of the former instrument.

In the codicil she expressly stated that she intended to have her will superseded by the 1930 trust and the codicil " unless the said deed of trust shall not be in effect at the time of my decease." Whereas this statement is negative only, it raises an inevitable inference that she did not wish the will superseded by the 1930 trust and the codicil, if the trust became ineffective.

The first item of the codicil, taken by itself, would have the effect of revoking the will by implication, since it gave all of the property which the testatrix might chance to own at death to Brooklyn Trust Company. This implication of revocation is, however, expressly conditioned by the succeeding item of the codicil, which stipulated that " in the event that at the time of my decease I shall not have exercised the right reserved by me to

revoke the said deed of trust," namely, that of November 18, 1930, " in full, then and *in that event only*, I revoke so much of my said Last Will and Testament as shall not be necessary or required to give force and effect to this Codicil." (Italics not in original.)

In other words, the implied revocation of the parts of the will which were inconsistent with the codicil were to be deemed revoked if the testatrix at the time of her death had not revoked the 1930 trust, and " *in that event only.*" Equivalently stated, such revocation was expressly conditioned on the non-occurrence of a specified event, namely, her revocation of the 1930 trust.

Testamentary documents which, in their entirety, are conditioned on the occurrence or non-occurrence of some stipulated condition, whereas infrequently encountered, are by no means unprecedented. (*Matter of Poonarian*, 234 N. Y. 329, 332, *et seq.; Matter of De Coster*, 150 Misc. 807, 809, 810; *Matter of Bittner*, 104 id. 112, 114; *Matter of Lindsay*, 2 Bradf. 204, 207, 208. See, also, *Matter of Webb*, 122 Misc. 129, 135; affd., 208 App. Div. 793.)

It is the policy of the law to effectuate any condition imposed upon a gift by a testator so long as compliance therewith will not infringe any positive provision of law or dictate of public policy. (*Hogan* v. *Curtin*, 88 N. Y. 162, 171; *Oliver* v. *Wells*, 254 id. 451, 459; *Matter of Brush*, 154 Misc. 480, 490: affd., 247 App. Div. 760; *Matter of Weinstein*, 158 Misc. 618, 620.) Obviously, a gift, as in the present codicil, which is conditioned on the continued effectiveness of a particularly specified agreement, is not one in respect of which any public policy exists. It must, therefore, be enforced as written.

One may surmise that the testatrix might have wished to have the document effective, despite her unequivocal statement to the contrary, in view of her erection of the new and different trust. Its substitution in place of the one expressly described would, however, transcend the authority of the court and amount to testamentary fabrication on its part. " In declaring a testator's intention, * * * the courts are limited to the words which the testator, himself, has used in his will " (*Matter of Durand*, 250 N. Y. 45, 54); " we cannot make a new will or build up a scheme for the purpose of carrying out what might be thought was or would be in accordance with his wishes " (*Tilden* v. *Green*, 130 N. Y. 29, 51); " the courts cannot reconstruct wills in accordance with the near intention of the maker " (*Matter of Durand, supra*, at p. 55).

It follows that the express condition upon which the operativeness of the codicil was predicated having failed, it must be determined to possess no effect for devolutionary purposes.

Enter decree on notice in conformity herewith.