# Richmond

ROSALIE E. WILSON v. TRACEY FRANCIS, ET AL.

June 12, 1967.

Record No. 6403.

Present, All the Justices.

William A. Pusey (E. Milton Farley, III; Hunton, Williams, Gay, Powell & Gibson, on brief), for appellant.

Henry W. McLaughlin, III; W. M. Lewis (Henry W. McLaughlin, Jr.; McLaughlin and McLaughlin, on brief), for appellees.

SNEAD, J., delivered the opinion of the court.

The critical issue presented in this appeal is whether a will executed by an unmarried woman was revoked by former Code, § 64-58 because of her subsequent marriage, even though that section was repealed prior to her death. The precise question is one of first impression for this court.

Section 64-58, Code 1950 (§ 5232, Code 1919), which was in effect at the time of the testatrix's marriage, was repealed in 1956. That section provided:

"Every will made by a man or woman shall be revoked by his or her marriage, except a will made in exercise of a power of appointment, when the estate thereby appointed would not, in default of such appointment, pass to his or her heir, personal representative or next of kin."

The pertinent facts, which are not in dispute, may be summarized as follows: On August 6, 1937, Mrs. Rosa Roark, a widow, executed her last will and testament. Rosalie E. Wilson, appellant, was named as the residuary legatee and devisee of her estate. On September 26, 1937, Mrs. Roark married Samuel H. Holland. Mrs. Holland died on January 15, 1965. Holland predeceased Mrs. Holland and there were no children born of this union.

On January 21, 1965, Mrs. Holland's will was admitted to probate by the Clerk of the Circuit Court of Halifax County. Pursuant to the provisions of Code, § 64-74, Tracey Francis and certain other heirs-at-law of the decedent, appellees, appealed to the Circuit Court from the clerk's order admitting the will to probate. There, appellees contended that, when Mrs. Roark married Holland, her will was revoked under the terms of § 64-58, *supra*, which was in effect at the time of the marriage. A hearing was had and by order entered November 10, 1965, the trial court adjudged that under the provisions of former Code, § 64-58 the act of marriage revoked Mrs. Holland's will, and it was rejected from probate. It is from this order that Rosalie E. Wilson has appealed.

In her sole assignment of error, Mrs. Wilson contends that the trial court erred in ruling that the will of Mrs. Holland was revoked upon her marriage under the terms of former § 64-58, which was repealed in 1956, prior to the death of Mrs. Holland.

Mrs. Wilson argues that (1) because a will is ambulatory and speaks as of its maker's death, the law applicable in determining whether a will has been revoked is the law in effect at the time of the maker's death; (2) former § 64-58, by its own terms, could not be applied until the death of the maker, because until that time it

could not be determined whether the will was made in the exercise of a power of appointment, and if so, whether the appointed estate, in default of such appointment, would pass to the testatrix's heir, personal representative or next of kin, and (3) public policy requires that a will should not be held revoked under a statute which was repealed before the maker's death.

On the other hand, appellees contend that under the provisions of § 64-58, Mrs. Holland's will was revoked *eo instanti* upon her marriage.

[1] It is conceded that if Mrs. Holland's will was revoked immediately upon her marriage by operation of § 64-58, there has been no revival of the will in compliance with Code, § 64-60.[1] It is also conceded that Mrs. Holland's will was not made in the exercise of a power of appointment. Hence, under the facts of this case, we need not consider the exception in the statute (§ 64-58) relating to the exercise of a power of appointment. The dominant question for decision is whether Mrs. Holland's will was revoked immediately upon her marriage by operation of the statute then in effect or whether the law in effect at the time of her death applied, at which time § 64-58 had been repealed. If the latter principle is to be applied, the will in issue is valid and entitled to probate.

In support of her position that the law in effect at the time of the maker's death rather than the law in effect at the time of marriage controls the effect of marriage upon the validity of a previously existing will, Mrs. Wilson cites *In re Gaffken's Will*, 197 App. Div. 257, 188 N.Y. Supp. 852, affirmed per curiam, 233 N.Y. 688, 135 N.E. 971; *In re Redmond's Will*, 60 N.Y.S. 2d 316 (Surr. Ct.); *In re Tierney's Estate*, 148 Misc. 378, 266 N.Y. Supp. 51 (Surr. Ct.); *In re Holmes' Will*, 147 Misc. 394, 264 N.Y. Supp. 77 (Surr. Ct.). While the above cited cases do support Mrs. Wilson's contention, *Gaffken* and *Tierney* involved the interpretation of statutes that in addition to marriage, required the survival of a spouse or issue for which no provision by will or settlement was made before the statute would operate. *Redmond* and *Holmes*, decided by the Surrogate's Court, involved the interpretation of statutes similar to the portion of our statute with which we are concerned.

However, *In re Berger's Estate*, 198 Cal. 103, 243 Pac. 862, also

---

1 "§ 64-60—No will or codicil, or any part thereof, which shall be in any manner revoked, shall, after being revoked, be revived otherwise than by the re-execution thereof, or by a codicil executed in the manner hereinbefore required, and then only to the extent to which an intention to revive the same is shown."

involved a similar situation. There an unmarried woman executed a will on November 6, 1911, leaving her entire estate to Claudius Large. She later married Harry Boyle from whom she was divorced on November 4, 1916. On March 8, 1918, she married Jean Berger who predeceased her. Mrs. Berger died on January 4, 1924, leaving no issue. Large offered the will for probate, and Mrs. Berger's heirs-at-law objected on the ground that the will was revoked upon her marriage to Boyle. At the time of her marriage to Boyle a California statute provided: "A will, executed by an unmarried woman, is revoked by her subsequent marriage, and is not revived by the death of her husband." The statute was amended after testatrix's marriage and before her death. Under it the will would have been valid. The lower court admitted the will to probate.

On appeal, the sole question presented was whether Mrs. Berger's will was "finally and completely revoked" by her marriage to Boyle or whether it was governed by the amended statute. Large, the beneficiary under the will, contended that "revocation, like the will itself, is ambulatory in every case, and dependent for effectiveness upon the law in force at the time of the death of the testator." In rejecting this contention and holding the will revoked *eo instanti* by her marriage, the court observed that "[r]evocation being a 'thing done and complete' is not in its nature ambulatory", and that "[w]hen the contingency provided for by the Legislature becomes operative, the will is rendered dead as completely as if the testator had destroyed it by any of the means known to the law."

Appellant cites a California case subsequent to *Berger, supra, In re Derruau's Estate*, 133 Cal. App. 769, 24 P. 2d 865, and says that it distinguished *Berger* "into obscurity by limiting it to its facts." But this case did not overrule *Berger. Derruau* was decided by an intermediate appellate court upon a later statute which did not revoke a will upon marriage alone but was also dependent upon the survival of a spouse. The statute differed from the one interpreted in *Berger* and the court distinguished the two cases on that basis.

For an interesting and enlightening discussion of revocation of a will by marriage (§ 64-58), reference is made to Lamb, *Virginia Probate Practice*, § 33(c), pp. 85 *et seq.* The author observed: "It is no new thought that what is sufficient to revoke a will is to be determined by the law as it stood when the occurrence relied on to revoke took place." p. 86.

[2] It is true, as appellant contends, that "a will is ambulatory and speaks only as of the date of its maker's death." In *Timberlake* v.

*State-Planters Bank,* 201 Va. 950, 957, 115 S.E. 2d 39, 44, we said:

"A will is an ambulatory instrument, not intended or allowed to take effect until the death of the maker. It may be changed during life as often as the mind and purpose of the testator change. While he lives his written will has no life or force, and is not operative or effective for any purpose."

However, the fact that a will is ambulatory and speaks as of the maker's death does not preclude the General Assembly from enacting laws which revoke and declare a nullity an existing will upon the occurrence of a specified event such as marriage. After such a revocation, unless the will is revived in a manner prescribed by law, the will never speaks.

[3] We have had occasion in the past to rule on the effect of § 64-58 upon a testator's will. These cases are factually different from the one at bar principally because the testator died before the repeal of the statute in 1956.

In *Shackelford* v. *Shackelford,* 181 Va. 869, 27 S.E. 2d 354, Shackelford's first wife died in 1936. Subsequently on May 16, 1938, he executed his will, and on May 1, 1939 he married his second wife. Shackelford died on November 21, 1940, leaving no surviving children. The trial court held that § 64-58 (then § 5232, Code 1942) "is complete and absolute, and unqualifiedly revokes such a will." On appeal this court affirmed the lower court, holding that "[t]he subsequent marriage of the testator *ipso facto* revokes his will."

In *Patton* v. *Patton,* 201 Va. 705, 112 S.E. 2d 849, Patton and his wife executed mutual wills. After his wife's death Patton remarried, but the couple was soon divorced. Upon Patton's death on July 26, 1952, certain of his children contended that he had died intestate. The lower court held that Patton's will was revoked under § 64-58 by his subsequent marriage even though he was unmarried at the time of his death. This court affirmed the holding of the trial court that Patton had died intestate and stated:

"Section 64-58 is an old statute which has been carried unchanged in every Code of Virginia subsequent to the Code of 1849, until 1956. Under it many wills have been revoked over the years. While it has been in existence, we have uniformly held that its provision is peremptory and makes no exception. *Phaup* v. *Wooldridge,* 14 Gratt. (55 Va.) 332; *Hale* v. *Hale,* 90 Va. 728, 19 S.E. 739; *Shackelford* v. *Shackelford,* 181 Va. 869, 873, 27 S.E. 2d 354; 20 M.J., Wills, § 49, page 199." 201 Va. at p. 710, 112 S.E. 2d at p. 853.

In our view the law as it stood at the time of Mrs. Holland's

marriage controls the effect of marriage upon the validity of her will and not the law at the time of her death. The fact that § 64-58 was repealed before her death is of no consequence. This repeal had no retroactive effect. Section 64-58 was clear, positive and unequivocal. It stated that "Every will by a man or woman *shall be revoked by his or her marriage* * * *." (Italics supplied.) As has been said, the exception relating to the exercise of a power of appointment is not here applicable. The only event required under the above quoted portion of the statute was marriage and upon occurrence of that event Mrs. Holland's will was revoked *eo instanti*. It immediately became a void instrument. We do not agree that this holding is contrary to public policy as suggested by appellant.

Accordingly, the judgment appealed from is

*Affirmed.*