· IN RE: PROBATE OF WILL OF LEVI E. (L. E.) MITCHELL

No. 47

(Filed 13 March 1974)

**Wills § 8— revocation of will by marriage — effect of revision of statute on revoked will**

Where testator's will made in January 1963 was revoked under former G.S. 31-5.3 by his marriage in November 1963, the will was not revived by the 1967 revision of G.S. 31-5.3 providing that no will should be revoked by any change in the marital status of the maker.

ON *certiorari* granted upon applicants' petition for review of the decision of the Court of Appeals (19 N.C. App. 236, 198 S.E. 2d 233) reversing the judgment of Judge *Perry Martin,* 22 January 1973 Session of WAYNE, docketed and argued in the Supreme Court as Case No. 101 at the Fall Term 1973.

This proceeding was begun by an application to the Clerk of the Superior Court for the probate of a paperwriting purporting to be the will of Levi Mitchell (Mitchell). The following facts are stipulated:

On 16 January 1963 Mitchell, then a widower, duly executed a will in which he devised all his property to the seven children of his second wife, who had died in 1962. Omitted as beneficiaries were the three children of his first wife, who died in 1923.

In November 1963 Mitchell married his third wife, Alma Mitchell (Alma), who survives him. No children were born of this marriage. The will which Mitchell executed on 16 January 1963 made no reference to Alma or a contemplated marriage, and it exercised no power of appointment.

On 18 July 1972 Mitchell died. Thereafter L. E. Mitchell, Jr., and Leon C. Mitchell, the two sons named as executors, presented the will dated 16 January 1963 to the clerk for probate. Alma protested the probate. The clerk refused to probate the proffered instrument on the ground that G.S. 31-5.3 as written in November 1963 had revoked the will *eo instante* when Mitchell married Alma. From his order denying probate, entered 16 October 1972, applicants appealed to the judge of the superior court, and Judge Martin heard the matter at the January 1973 Session. Being of the opinion that G.S. 31-5.3 as rewritten in 1967 applied retroactively to the will of persons dying

after 1 October 1967, Judge Martin held that Mitchell's subsequent marriage had not revoked his will.

From Judge Martin's order that the paperwriting be probated as Mitchell's last will and testament, Alma appealed to the Court of Appeals. That Court reversed Judge Martin's order and directed that the order of the clerk denying probate be reinstated. Upon applicants' petition we allowed certiorari.

*Taylor, Allen, Warren & Kerr for applicant-appellants.*

*Roland C. Braswell and Herbert B. Hulse for protestant-appellee.*

SHARP, Justice.

Between 9 January 1845 and 1 October 1967 it was the law in North Carolina (with two exceptions not applicable to this case) that upon the marriage of any person his or her will was revoked. *Sawyer v. Sawyer,* 52 N.C. 133 (1859); 1 Wiggins, *Wills and Administration of Estates in North Carolina* § 100 (1964). This law, enacted as N. C. Sess. Laws, Ch. 88, § 10 (1844-45), was codified as G.S. 31-5.3 (Vol. 2A, 1966 Replacement) at the time Mitchell executed his will and on the date of his marriage. It was repealed by N. C. Sess. Laws, Ch. 128 (1967) (hereinafter referred to as 1967 G.S. 31-5.3), which provided:

"Section 1. G.S. 31-5.3 is hereby rewritten to read as follows:

"A will is not revoked by a subsequent marriage of the maker; and the surviving spouse may dissent from such will made prior to the marriage in the same manner, upon the same conditions, and to the same extent, as a surviving spouse may dissent from a will made subsequent to marriage.

"Sec. 2. This act shall apply only to wills of persons dying on or after October 1, 1967.

"Sec. 3. All laws and clauses of laws in conflict with this Act are hereby repealed.

"Sec. 4. This Act shall become effective on October 1, 1967."

The question here presented is whether 1967 G.S. 31-5.3 retroactively applies to save from revocation under former G.S.

In re Mitchell

31-5.3 a will made by an unmarried person who married prior to 1 October 1967 and died thereafter. As the Court of Appeals noted, this is an issue of first impression in this State. It was for that reason we allowed certiorari.

The applicants for probate contend that because a will is ambulatory, and speaks only as of the date of its maker's death, it may not be held revoked under a statute which was repealed before the maker's death; that the right to probate is governed by the law in force at the maker's death.

Protestant contends that, under former G.S. 31-5.3, Mitchell's will was revoked *eo instante* upon his marriage to her and that thereafter it could be revived only by re-execution as provided by G.S. 31-5.8 (1966).

In our view the logic of protestants' contentions is irrebuttable.

Under former G.S. 31-5.3 the effect of marriage upon a maker's will was "positive revocation." *Sawyer v. Sawyer, supra.* In 1958 this Court said, "The object of G.S. 31-5.3 is set out as plainly as language can do it. The statute provides that a person's subsequent marriage *ipso facto,* with certain exceptions, revokes all prior wills made by such person." *In Re Will of Tenner,* 248 N.C. 72, 73, 102 S.E. 2d 391, 392 (1958). Thus, at the time of Mitchell's marriage in November 1963 his will was revoked by operation of law, and it could not be revived "otherwise than by a re-execution thereof, or by the execution of another will in which the revoked will or part thereof is incorporated by reference." G.S. 31-5.8. After his marriage Mitchell never attempted to revive his revoked will in any manner whatever. Albeit his will remained intact as a paperwriting, on the effective date of 1967 G.S. 31-5.3 it had had no legal existence for almost four years. Marriage had revoked the will as completely as if it had been physically destroyed. Thus, at the time of his death on 18 July 1972 Mitchell had no will and, as an intestate, 1967 G.S. 31-5.3 had no application to him. Had this marriage occurred *after* 1 October 1967 it would not have revoked his will but Alma, as the surviving spouse, could have dissented in the same manner as if the will had been made subsequent to the marriage.

A statute will not be construed to have retroactive effect unless that intent is clearly expressed or arises by necessary

implication from its terms. *Smith v. Mercer,* 276 N.C. 329, 172 S.E. 2d 489 (1970) ; 7 N. C. Index 2d, *Statutes* § 8 (1969). Although 1967 G.S. 31-5.3 is made applicable only to the wills of persons dying after 1 October 1967, we find nothing in that statute to support applicants' argument that this limitation clearly manifests the legislative intent to change retroactively the effect which marriage had upon the will of a single person prior to 1 October 1967, or to revive *ipso facto* a will which had been positively and totally revoked prior to its enactment. The legislature was well aware that for over 122 years prior to 1 October 1967, by operation of law, marriage had instantly revoked a will and that, under G.S. 31-5.8, a revoked will could be revived only by the re-execution of another will. Had it intended that 1967 G.S. 31-5.3 would revive wills previously revoked by marriage we must assume it would have said so specifically.

The conclusion we reach in this case is supported by the following decisions: *In Re Estate of Crohn,* 8 Ore. App. 284, 494 P. 2d 258 (1972) ; *Wilson v. Francis,* 208 Va. 83, 155 S.E. 2d 49 (1967) ; *In Re Estate of Stolte,* 37 Ill. 2d 427, 226 N.E. 2d 615 (1967) ; *In Re Berger's Estate,* 198 Cal. 103, 243 P. 862 (1926). *See also* 2 Page on Wills (Bowe-Parker Rev. 1960) § 21.97.

*In Re Berger's Estate, supra,* is the leading case dealing with this question. The facts in *Berger* were these:

In 1911, C. D., unmarried, made her will. The California law then provided that marriage revoked a woman's will and it was not revived by her husband's death. In 1913, C. D. married H. L. B. from whom she was later divorced. In 1918 she married Berger. In 1919 the law was changed to provide that if, after making a will, the maker married and her husband survived her, the will was revoked unless it provided for him or manifested an intention to disinherit him. In 1923 Berger died. In 1924 Mrs. Berger died childless, and her 1911 will was offered for probate. In the ensuing contest the parties made the same contentions which are being made here. In denying probate the California Supreme Court recognized that wills are ambulatory and create no rights until the maker's death, and that the legislature has full power to regulate the right to make a will, the manner of its execution and revocation. The court disposed of applicant's contention that revocation, like the will

---

**In re Mitchell**

---

itself, is ambulatory and therefore depends upon the law in force at the time of the maker's death upon two grounds:

(1) "Revocation being a 'thing done and complete' is not in its nature ambulatory. The rules of law applicable to the reviving of wills revoked by the act of the makers are equally applicable to the reviving of wills revoked by act of law, *e.g.,* the effect of marriage; for in either case the will, being revoked, is of no effect until new life is given to it. *Sawyer v. Sawyer,* 52 N.C. 134."

(2) The contention depends upon a retroactive application of the 1919 law, which was passed some six years after C. D. married H. L. B. "That cannot be done. Section 1300, as amended in 1919, is not retroactive in terms. No indication can be gathered from it that the Legislature intended that it should be retroactive. Consequently we must regard the intention to have been that it should have only a prospective, and not a retrospective, operation." *Id.* at 110, 243 P. at 865.

In *Wilson v. Francis, supra,* upon facts and law substantially the same as those of this case, the Supreme Court of Appeals of Virginia denied probate to a will revoked by marriage under a law repealed before her death. Upon the authority of *Berger* it held that the law in effect at the time of the decedent's marriage (Code Sec. 64-58) controlled the effect of marriage upon her will; that under Section 64-58 her marriage had *ipso facto* revoked her will and its subsequent repeal had no retroactive effect. In an indistinguishable situation the illinois Supreme Court also relied upon *Berger* in deciding that a will revoked under prior law by the maker's marriage was not revived by a subsequent amendment to the law which provided that no will should be revoked by any change in the marital status of the maker. The court perceived in the language of amendment no intent that it should have retroactive application but said, "Even if such language were to show an intent to make the amendment retroactive it could only apply to wills in existence." *In Re Stolte, supra* at 434, 226 N.E. 2d at 619.

Upon facts and law analogous to those of this case the Court of Appeals of Oregon, citing *Berger, Wilson v. Francis,* and *In Re Estate of Stolte,* posed and answered the determinative question as follows:

"If a will was revoked prior to the effective date of the new probate code, does the revocation remain effective? The

only logical answer is, 'Yes.' Although the new code applies to wills of decedents dying on or after July 1, 1970, Alfred Crohn no longer had a will on that date because it had previously been revoked." *In Re Estate of Crohn, supra* at 288, 494 P. 2d at 260.

Reason and authority support the decision of the Court of Appeals, which is

Affirmed.