442 S.E.2d 726

Lois FOY, Herbert V. Jones, Jr. and Shirley Alta Jones, Petitioners,

v.

COUNTY COMMISSION OF BERKELEY COUNTY; Eula Jones; and Maria L. Childers, in her Capacity as Fiduciary Supervisor of the County Commission of Berkeley County, Respondents.

No. 21831.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1994.

Decided March 28, 1994.

Robert D. Aitcheson, Charles Town, for petitioners.

Janet L. Scalia, Asst. Pros. Atty., Martinsburg, for respondents.

McHUGH, Justice:

This case is before this Court upon the certified questions of the Circuit Court of Berkeley County, West Virginia. The petitioners, Lois Foy, Herbert V. Jones, Jr., and Shirley Alta Jones are children of Herbert Vauter Jones, Sr., who is now deceased. The respondents are the County Commission of Berkeley County, Eula Jones, the widow of the decedent, and Maria L. Childers, the fiduciary supervisor of the Berkeley County Commission.

## I.

Herbert Vauter Jones, Sr., died on June 10, 1992. Petitioner Foy was named, in the decedent's will, as the executrix and a beneficiary.

At the time of the execution of the will, the will being dated March 24, 1986, the respondent, Eula Jones, resided with Herbert V. Jones, Sr., but they were not married at that time. In November, 1986, Mr. Jones, Sr. changed the beneficiary in his accidental death and dismemberment policy and made Eula Jones the beneficiary of such policy proceeds. Eula Jones and Herbert V. Jones, Sr. were later married on September 21, 1990.

## II.

Following the death of her father, on June 22, 1992, petitioner Foy presented the decedent's will, to respondent Childers, the fiduciary supervisor of Berkeley County, for admission of the will to probate and qualification as petitioner Foy as executrix. However, respondent Childers refused to admit the will to probate but did submit the will to the Berkeley County Commission. Thereafter, on June 23, 1992, petitioner Foy filed a petition for probate before the county commission. Eula Jones, assuming the will was void, was permitted by the county commission to qualify as the administratrix of the decedent's estate.

On October 1, 1992, the Commission held a hearing and found the will to be void and would not admit the will to probate on the grounds that the decedent's marriage to Eula Jones revoked the prior will under the provisions of *W.Va.Code*, 41–1–6 [1975], in effect on the date of the marriage.

On January 20, 1993, the petitioners filed a petition before the circuit court asking, in relevant part, that the court reverse the ruling of the county commission and admit the decedent's will to probate. The petitioners further requested declaratory relief by asking the court to find that the provisions of

*W.Va.Code*, 41–1–6 [Supp.1992],[1] as amended and effective June 5, 1992, are operative and applicable to the estates of persons dying after June 5, 1992. On March 8, 1993, a hearing was held and the circuit court and counsel certified the following two questions to this Court:

1. Are the provisions of *W.Va.Code*, 41–1–6, effective June 5, 1992, applicable to all testators who die on or after June 5, 1992?

2. If a married person dies after June 5, 1992, do the provisions of *W.Va.Code*, 41–1–6, effective June 5, 1992, operate to revive his last will and testament executed by him prior to his marriage and prior to June 5, 1992?

The circuit court answered both questions in the affirmative.

### III.

The underlying issue within these two certified questions is whether the will is valid in light of the decedent's marriage to Eula Jones and the recent amendments to *W.Va. Code*, 41–1–6 [Supp.1992].

Prior to June 5, 1992, *W.Va.Code*, 41–1–6 [1975] read as follows:

*Every will made by a man or woman shall be revoked by his or her marriage, annulment or divorce, except a will which makes provision therein for such contingency, or will which, though not making provision for such contingency, is made in exercise of a power of appointment, when the estate thereby appointed would not, in default of such appointment, pass to his or her heirs, personal representative, or next of kin: Provided, that even when the estate thereby appointed would, in default of such appointment, pass to his or her heirs, personal representative, or next of kin, such will shall, nevertheless, not be revoked (a) by such marriage if such marriage is between the person appointed in the exercise of such power of appointment and the person exercising such power of appointment, or (b) by such annulment or divorce, unless the person appointed in the*

exercise of such power of appointment is the person whose marriage to the person exercising such power of appointment was terminated by such annulment or divorce.

(emphasis added).

Following the June 5, 1992, amendments, *W.Va.Code*, 41–1–6 [Supp.1992] read:

*If after executing a will the testator is divorced or his marriage annulled, the divorce or annulment revokes any disposition or appointment of property made by the will to the former spouse,* any provision conferring a general or special power of appointment on the former spouse, and any nomination of the former spouse as executor, trustee, conservator, or guardian, *unless the will expressly provides otherwise.* Property prevented from passing to a former spouse because of revocation by divorce or annulment passes as if the former spouse failed to survive the decedent, and other provisions conferring some power or office on the former spouse are interpreted as if the spouse failed to survive the decedent. Notwithstanding the provisions of section three [§ 41–3–3], article three, chapter forty-one of this code, the share of such spouse shall be distributed according to the residuary clause of the decedent's will or according to the statute of intestate succession for the decedents property. If provisions are revoked solely by this section, they are revived by testator's remarriage to the former spouse. For purposes of this section, divorce or annulment means any divorce or annulment which would exclude the spouse as a surviving spouse. A decree of separation which does not terminate the status of husband and wife is not a divorce for purposes of this section. No change of circumstances other than as described in this section revokes a will.

(emphasis added).

The relevant differences between the old and new versions of the statute as they relate to the facts in this case are as follows. The former version of the statute provided that if

---

**1.** The statute was amended again in 1993, however, these latest amendments do not affect the

outcome of this case.

a person made a will and then subsequently married, the marriage would revoke the will entirely unless the testator made a provision regarding marriage. The amended version of the statute has abolished the rule that a subsequent marriage revokes a will. The statute now provides that upon the divorce or annulment of the testator's marriage, the testator's will is revoked with regard to the former spouse unless the will provides otherwise. It is the former version of the statute that is applicable to this case because the focus is on when the testator married rather than when the testator died. Because a marriage under the former version of the statute revoked the will, it cannot be revived without re-execution of the same. *See W.Va.Code,* 41–1–8 [1923].

## A.

The first certified question simply asks whether the provisions of *W.Va.Code,* 41–1–6, effective after June 5, 1992, are applicable to all testators who die on or after June 5, 1992. With respect to this first certified question, the parties agree with the circuit court's conclusion that the amendments to *W.Va.Code,* 41–1–6 [Supp.1992] should be applied prospectively.

There is a presumption of prospective application of statutes unless the intent for retroactive application is expressed within the statute. We have recently reiterated this principle in syllabus point 4 of *Arnold v. Turek,* 185 W.Va. 400, 407 S.E.2d 706 (1991), in which we held:

 ' "A statute is presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms or is necessarily implied from the language of the statute." Syllabus Point 3, *Shanholtz v. Monongahela Power Co.,* [165 W.Va. 305], 270 S.E.2d 178 (1980).' Syllabus Point 2, *State ex rel. Manchin v. Lively,* 170 W.Va. 672, 295 S.E.2d 912 (1982).

The statute was amended again in 1993. The most relevant amendment, in 1993, was the addition of subsection (b) which clarified when this section applied to all divorces, annulments or remarriages: "This section applies to all divorces annulments or remarriages which become effective *after* the fifth day of June, one thousand nine hundred ninety-two." *W.Va.Code,* 41–1–6(b) [Supp. 1993]. (emphasis added).

The circuit court correctly answered the first certified question. However, the underlying issue in this question with respect to this case concerns the difference between the former version and the amended version of the statute.[2] Accordingly, *W.Va. Code,* 41–1–6 [1975], provided, in part that, "[e]very will made by a man or woman shall be revoked by his or her marriage, annulment or divorce, except a will which makes provision therein for such contingency[.]" The amendments to *W.Va.Code,* 41–1–6 [Supp.1992], effective after June 5, 1992, provide that, "[i]f after executing a will the testator is divorced or his marriage annulled, the divorce or annulment revokes any disposition or appointment of property made by the will to the former spouse, ..., unless the will expressly provides otherwise." As noted above, the primary difference between the 1975 version of the statute and the 1992 version of the statute is that the former, with certain exceptions, essentially revokes the entire will by marriage, divorce or annulment. The amended version only revokes the disposition of the property made by the will to the former spouse upon divorce or annulment. Marriage no longer revokes a will.

## B.

The second certified question poses the query that if a married person dies after June 5, 1992, do the provisions of *W.Va.Code,* 41–1–6 [Supp.1992] operate to revive one's last will and testament executed by him prior

---

**2.** As we have previously maintained regarding certified questions, "we retain some flexibility in determining how and to what extent [a certified question from a circuit court to us] will be answered." *City of Fairmont v. Retail Wholesale & Department Store Union,* 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590 (1980), *citing West Virginia Water Service Co. v. Cunningham,* 143 W.Va. 1, 98 S.E.2d 891 (1957). *See also Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74 (1993); *W.Va. Code,* 58–5–2 [1967].

to his marriage and prior to June 5, 1992. The circuit court incorrectly answered the second certified question. It is this question that gives rise to the dispute between the parties.

The petitioners' primary contention is that even though, on June 5, 1992, and prior thereto, *W.Va.Code*, 41–1–6 [Supp.1992], provided that a subsequent marriage revoked a will, the enactment of the 1992 amendments to this statute eliminates a subsequent marriage as a circumstance that revokes a will, and thus, in effect the decedent's will has been revived.

The petitioners conclude that upon the generally recognized principles of the laws in West Virginia, the will must be considered valid and thus be admitted to probate. In support of this conclusion, the petitioners refer to the well-established proposition enunciated by this Court:

> ' "Wherever possible to bring into operation a testator's intention, a court will give such construction to a will as to bring into effect every word or part thereof and such construction will be made as to avoid the creation of intestacy." *In Re: Conley*, 122 W.Va. 559, 562 [, 12 S.E.2d 49, 51 (1940) ].' Syl. pt. 3, *Rastle v. Gamsjager*, 151 W.Va. 499, 153 S.E.2d 403 (1967).

Syl. pt. 3, *Matheny v. Matheny*, 182 W.Va. 790, 392 S.E.2d 230 (1990).

Furthermore, the petitioners note that wills are executory instruments, meaning the rights and benefits conferred thereunder do not become effective until the testator dies. *See W.Va.Code*, 41–3–1 [1923]. The petitioners therefore submit that the legal status of the will cannot be determined until the death of the testator when the will becomes effective.

Because, as the petitioners maintain, the date of death serves as the cornerstone in determining when certain rights vest, the decedent's will was in essence revived by the enactment of the new statute eliminating subsequent marriage as a circumstance revoking a will. More simply, the enactments to the statute in question became effective after June 5, 1992; and, this being the controlling law on the date of the decedent's death, makes the will valid. Therefore, the petitioners surmise that the date of death must control because this is when the substantive rights conferred upon one by a will become vested.

The respondents contend that the real issue is the existence of the will and not the construction of the will as the petitioners argue. The respondents argue that there is no will because it was revoked upon the decedent's marriage in 1990. As noted by the respondents, *W.Va.Code*, 41–1–8 [1923] provides:

> No will or codicil, or any part thereof, which shall be in any manner revoked, shall, after being revoked, be revived otherwise than by the re-execution thereof, or by a codicil executed in the manner hereinbefore required, and the [sic] only to the extent to which an intention to re-revive the same is shown.

The decedent, as asserted by the respondents, did not re-execute the will, nor did he execute a codicil as required by this *Code* section. Therefore, there was no will in existence at the time of the decedent's death making construction of the will impossible.

The circuit court, as suggested by the respondents, misinterpreted the amended version of *W.Va.Code*, 41–1–6 [Supp.1992], to read that a previously revoked will can be automatically revived. The respondents submit that the language in the statute is clear, there is no proviso for the automatic revival of the will, therefore, there is no basis for the construction of the statute:

> 'When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.' Syl. Pt. 1, *Cummins v. State Workmen's Compensation Comm'r*, 152 W.Va. 781, 166 S.E.2d 562 (1969).

Syl. pt. 3, *Kosegi v. Pugliese*, 185 W.Va. 384, 407 S.E.2d 388 (1991). *See also State v. Boatright*, 184 W.Va. 27, 399 S.E.2d 57 (1990).

This Court has reviewed the existing case law of other jurisdictions regarding this issue and the conclusion we have reached in this

case is supported by the following decisions: *In re Berger's Estate*, 198 Cal. 103, 243 P. 862 (1926); *In re Estate of Hemmingsen*, 333 N.W.2d 880 (Minn.1983); *In re Will of Mitchell*, 285 N.C. 77, 203 S.E.2d 48 (1974); and, *Wilson v. Francis*, 208 Va. 83, 155 S.E.2d 49 (1967).

The leading case on this issue is *Berger, supra.* In that case, in 1911, an unmarried woman executed her will. The law in California at the time provided that a marriage revoked a woman's will and it could not be revived by her husband's death. In 1913, the testatrix married H.L. Boyle whom she later divorced. In 1918, the testatrix married J.B. Berger. In 1919, the law was amended to provide that if after making the will the testatrix should marry and the husband survives her the will was revoked unless the husband is provided for or an intention to disinherit him was so stated. Subsequently, Mr. Berger died in 1923, and the testatrix died in 1924. The lower court admitted the will to probate. On appeal, the question was whether the will was completely revoked by the testatrix's marriage to Mr. Boyle in 1913, or whether the will was valid and governed by the amended law, the law in force at the time of her death. The California Supreme Court denied probate and recognized that:

> Revocation being a 'thing done and complete' is not in its nature ambulatory. The rules of law applicable to the reviving of wills revoked by the act of the makers are equally applicable to the reviving of wills revoked by act of the law, e.g., the effect of marriage; for in either case the will, being revoked, is of no effect until new life is given to it. *Sawyer v. Sawyer*, 52 N.C. 134 [(1859)].

*Id.* 243 P. at 865.

The Supreme Court of Appeals of Virginia faced this issue for the first time in *Wilson v. Francis, supra.* In *Wilson*, that court was presented with the question as to whether a will executed by an unmarried woman was revoked by former Virginia Code, § 64–58[3] because of subsequent marriage, even though that section was repealed prior to her death. The court therein looked to *Berger* and noted that regardless of the fact that a will is ambulatory and speaks as of the maker's death, the General Assembly is not precluded from enacting laws which can revoke and declare a nullity of an existing will upon the occurrence of a specified event such as marriage. As the court continued to note, after such a revocation, unless the will is revived in a manner prescribed by law, the will never speaks. The court ultimately held that the law as it stood at the time of the testatrix's marriage controls the effect of marriage upon the validity of her will and not the law at the time of her death.

The *Berger* case also served as the supporting authority for a case of first impression for the Supreme Court of North Carolina in *Mitchell, supra.* In that case, the law in North Carolina, from 1845, to 1967, provided that upon the marriage of any person his or her will was revoked. This law was in effect at the time the testator executed his will and on the date of his subsequent marriage. This particular law was later repealed and rewritten, in 1967, to read, in relevant part, that a will was no longer revoked by a subsequent marriage of the maker. The testator died in 1972. The lower court denied probate of the will. The question presented on appeal was whether the amended law applied retroactively to save a will from revocation that was made under the old law. The North Carolina Supreme Court held that:

> [A]t the time of [the testator's] marriage in November 1963 his will was revoked by operation of law, and it could not be revived 'otherwise than by a re-execution thereof, or by the execution of another will in which the revoked will or part thereof is incorporated by reference.' ... After his marriage [the testator] never attempted to

---

3. In *Wilson*, the Virginia Supreme Court of Appeals noted that the Virginia Code 1950, § 64–58 (§ 5232, Code 1919), which was in effect at the time of the testatrix's marriage provided:

'Every will made by a man or woman shall be revoked by his or her marriage, except a will made in exercise of a power of appoint-

ment, when the estate thereby appointed would not, in default of such appointment, pass to his or her heir, personal representative or next of kin.'

*Wilson, supra* 155 S.E.2d at 49. This section was subsequently repealed in 1956.

revive his revoked will in any manner whatever.... Marriage had revoked the will as completely as if it had been physically destroyed. Thus, at the time of his death on 18 July 1972 [the testator] had no will and, as an intestate, [the amended law] had no application to him. Had his marriage occurred *after* [October 1, 1967, the date the law was amended] it would not have revoked his will but ... [his] surviving spouse, could have dissented in the same manner as if the will had been made subsequent to the marriage.

*Id.* 203 S.E.2d at 49–50. *See also In re Estate of Ralston,* 674 P.2d 1001, 1003 (Colo. Ct.App.1983) ("[W]e do not agree with petitioners' contention that the effectiveness of revocation is dependent on the law in force at the time of the testator's death (citations omitted).... The statute in effect at the time of [the testator's] marriage provides that a testator's subsequent marriage revokes any prior will, unless the will expressly provides otherwise.... [the testator's] will was revoked instantly upon his marriage....")

Upon facts and law analogous to the facts and law in the above cases, we are of the opinion that the decedent's marriage to Eula Jones in September of 1990, revoked the decedent's will, leaving the decedent to die intestate.

When a decedent executed a will in 1986, married in 1990, and died in 1992, the will was revoked pursuant to *W.Va.Code,* 41–1–6 [1975], which provides that a subsequent marriage revokes a will. The will was not revived because it was not re-executed pursuant to *W.Va.Code,* 41–1–8 [1923], which requires that a will be re-executed in order for it to be revived.

These certified questions having been answered, this case is dismissed from the docket of this Court and remanded to the Circuit Court of Berkeley County.

Certified questions answered.