STATE OF NORTH CAROLINA EX REL. HOWARD N. LEE, SECRETARY, DEPARTMENT OF NATURAL RESOURCES AND COMMUNITY DEVELOPMENT v. PENLAND-BAILEY COMPANY, INC.

No. 8024SC580

(Filed 3 February 1981)

Statutes § 8.1; Waters and Watercourses § 3.2— Sedimentation Pollution Control Act — land-disturbing activities prior to effective date of statute

Application of the Sedimentation Pollution Control Act of 1973 to prevent erosion and sedimentation of public waters resulting from "land-disturbing" activities which occurred before the statute became effective does not constitute an unlawful retroactive application of the statute since the purpose of the statute is to control erosion and sedimentation rather than only land-disturbing activities. G.S. 113A-51 et seq.

APPEAL by plaintiff from *Ervin, Judge.* Judgment signed 25

Lee v. Penland-Bailey Co.

April 1980 in Superior Court, MITCHELL County. Heard in the Court of Appeals 9 January 1981.

Plaintiff instituted this action to compel compliance with the Sedimentation Pollution Control Act of 1973. Plaintiff alleges that defendant operates and maintains a 10-acre tract of land in Mitchell County. In the operation of the property, defendant, or its agents or lessees with the knowledge and consent of defendant, carried out earth moving and filling actions on the property for the purpose of disposing of mining tailings and excess dirt. This constituted a "land-disturbing activity" within the meaning of N.C.G.S. 113A-52(6). Plaintiff further alleges that as a direct and proximate result of this land-disturbing action, erosion is taking place on the property and sediment is being deposited off the property, resulting in siltation of the adjacent North Toe River. Demand has been made on defendant to remedy the situation and defendant has refused to do so.

Defendant did not file an answer, but moved for summary judgment. Defendant filed an affidavit which does not deny any of the factual allegations of the complaint, but states that any land-disturbing activity by defendant or its lessee, Harris Mining Company, was done prior to the effective date of the sedimentation act, 1 July 1973. Therefore, defendant contends it is not subject to the act with respect to the condition of the property in question.

Upon the hearing, plaintiff stipulated that no "land-disturbing activity" within the meaning of the act has occurred on defendant's property since 1 July 1973. The trial court entered summary judgment for defendant, concluding as a matter of law "[t]hat all acts complained of by the plaintiff occurred prior to 1 July 1973 and the Sedimentation Pollution Control Act of 1973 does not apply to land disturbing activities occurring prior to its effective date."

From this judgment, plaintiff appeals.

*Attorney General Edmisten, by Assistant Attorneys General James L. Stuart and Daniel C. Oakley, for plaintiff appellant.*

*Hise & Harrison, by Lloyd Hise, Jr., for defendant appellee.*

MARTIN (Harry C.), Judge.

Defendant, in its motion for summary judgment and by argument and brief in this Court, rests its case solely upon the premise

that the "land-disturbing activity" on defendant's property happened before the effective date of the Sedimentation Pollution Control Act, and therefore the act is not applicable to the facts of this case. Defendant argues that applying the act to the facts of this case would constitute an unlawful retroactive application of the statute. It further contends that because the "land-disturbing activity" occurred prior to the effective date of the statute, the plaintiff has no authority to regulate the results of that activity. Additionally, defendant argues the act only regulates the "land-disturbing activity" and not any results of that action. Consistent with this position, defendant states that the regulatory provisions of the act cannot be invoked because the land-disturbing activity occurred before the effective date of the act. Invocation of these provisions would constitute a retroactive application of a prospective statute, regulating an accomplished event which was not so regulated when it took place. Defendant relies upon *Un. Pac. R.R. v. Laramie Stock Yards*, 231 U.S. 190, 58 L. Ed. 179 (1913); In re Mitchell, 285 N.C. 77, 203 S.E. 2d 48 (1974); *Smith v. Mercer*, 276 N.C. 329, 172 S.E.2d 489 (1970); and other cases. These cases illustrate the principle that, ordinarily, statutes are presumed to act prospectively only, unless it is clear that the legislature intended retroactive application.

To the contrary, plaintiff's position is that the purpose of the act was to prevent erosion and siltation of public waters. If erosion and siltation continue after the effective date of the statute, it is subject to the act, even though the land-disturbing activity causing it occurred before the statute became effective. Plaintiff contends that applying the regulatory provisions of the act to an existing and continuing erosion and siltation process is not a retroactive application, but rather a prospective application of the act.

To determine the answer to this question posed by this appeal, we look to the statute itself and other materials to find the legislative intent. The name of the act, "Sedimentation Pollution Control Act of 1973," gives the first clue as to the intent of the legislature. it refers to sedimentation control rather than the control of land-disturbing activity. The legislative purpose to control erosion and sedimentation is set out in the preamble of the statute.[1]

§ 113A-51. Preamble. — The sedimentation of streams, lakes and other waters of this State constitutes a major

---

[1] The 1975 amendment added the last sentence.

Lee v. Penland-Bailey Co.

pollution problem. Sedimentation occurs from the ero-
sion or depositing of soil and other materials into the
waters, principally from construction sites and road
maintenance. The continued development of this State
will result in an intensification of pollution through sedi-
mentation unless timely and appropriate action is taken.
Control of erosion and sedimentation is deemed vital to
the public interest and necessary to the public health and
welfare, and expenditures of funds for erosion and sedi-
mentation control programs shall be deemed for a public
purpose. It is the purpose of this Article to provide for the
creation, administration, and enforcement of a program
and for the adoption of minimal mandatory standards
which will permit development of this State to continue
with the least detrimental effects from pollution by sedi-
mentation. In recognition of the desirability of early coor-
dination of sedimentation control planning, it is the inten-
tion of the General Assembly that preconstruction confer-
ences be held among the affected parties, subject to the
availability of staff.

The statute makes clear its purpose to control erosion and
sedimentation.[2]

§ 113A-54. Powers and duties of the Commission. — (a)
The Commission shall, in cooperation with the Secretary
of Transportation and other appropriate State and fed-
eral agencies, develop, promulgate, publicize, and admin-
ister a comprehensive State erosion and sedimentation
control program.

(b) To implement this program the Commission shall
develop and adopt on or before July 1, 1974, rules and
regulations for the control of erosion and sedimentation
resulting from land-disturbing activities, which rules
and regulations may be revised from time to time as may
be necessary.

The legislative history of the act is consistent with the conclu-
sion that it was for the purpose of controlling erosion and sedimenta-

---

[2] Subsection (b) was amended in 1979 in a manner that does not affect our
purpose here, the determination of the intent of the legislature in its adoption of the
act.

tion, rather than only land-disturbing activities. Senate Resolution 961 of the 1971 General Assembly directed the Legislative Research Commission to study the need for legislation in eight designated areas of environmental concern including the "Prevention and abatement of pollution of the State's waters by sedimentation and siltation, particularly that occurring from runoff of surface waters and from erosion." S. Res. 961, § 1(5), Senate Journal, 1971 Session, A-76.

In response, the Legislative Research Commission reported to the legislature, in part:

> (1) Sedimentation from soil erosion and runoff constitutes a major pollution problem in North Carolina's rivers, lakes, and reservoirs.
>
> . . . .
>
> (4) The costs of controlling erosion appear to be small when compared to the benefits to be derived from such control.
>
> . . . .
>
> (8) There is a need for legislation and funds that would empower a state agency to develop state-wide regulations concerning sediment control, to coordinate the erosion control efforts of other agencies, to advise and assist local governments in developing sediment control programs, and to serve as liason with the Environmental Protection Agency for the coordination of state and Federal programs.

1973 Report of the Legislative Research Commission to the General Assembly of North Carolina, Environmental Problems, at 13-14.

The act and its legislative history point unerringly to a determined intent by the General Assembly to control erosion and sedimentation through this legislation. This intent is further demonstrated by the regulations adopted pursuant to the act and codified at Title 15, North Carolina Administrative Code, Chapter 4. The code provides:

EXISTING UNCOVERED AREAS

> (a) all uncovered areas existing on the effective date of

these rules and regulations which resulted from land-disturbing activities and exceed one contiguous acre, and are subject to continued accelerated erosion, and are causing off-site damage from sedimentation shall be provided with a ground cover or other protective measures, structures, or devices sufficient to restrain accelerated erosion and control off-site sedimentation.

15 N.C. Ad. Code 4B.0016(a).

Defendant does not challenge the validity of this regulation but charges that it cannot be applied to the facts of this case, as to do so would result in retroactive application of the regulation. We do not agree. Subjecting the facts of this case to the act does not constitute a retroactive application of the statute and regulations. All the requirements to invoke the act and regulations are met by the facts of this case: the condition of the land directly resulted from land-disturbing activities, the land in question exceeds one acre in size, and the land has been and is experiencing accelerated erosion which is causing damages off the property by silting the North Toe River.

A statute is not necessarily unconstitutionally retroactive where its application depends in part upon a fact that antedates its effective date. The proper question for consideration is whether the act as applied will interfere with rights which had vested or liabilities which had accrued at the time it took effect. *Wood v. Stevens & Co.*, 297 N.C. 636, 256 S.E.2d 692 (1979); *Booker v. Medical Center*, 297 N.C. 458, 256 S.E.2d 189 (1979). Although we hold the application of the act to the facts of this case is not a retroactive use of the statute, defendant has also failed to produce any evidence or argument that the act as applied interfered with any of its vested rights or liabilities. Defendant only makes some vague reference in its brief to its relations with its lessee. We note defendant's brief also states the lease was terminated more than seven years ago. The Supreme Court of the United States, in discussing retroactivity of statutes in *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 49 L. Ed. 2d 752 (1976), stated:

[I]t may be that the liability imposed by the Act for disabilities suffered by former employees was not anticipated at the time of actual employment. But our cases are clear that legislation readjusting rights and burdens is not

unlawful solely because it upsets otherwise settled expectations. [Citations omitted.] This is true even though the effect of the legislation is to impose a new duty or liability based on past acts.

*Id.* at 16, 49 L. Ed. 2d. at 766-67 (footnote omitted). This holding effectively refutes defendant's argument that by applying the act to this case its relations with its lessee are materially affected.

The Court in *Chicage & Alton R.R. v. Tranbarger*, 238 U.S. 67, 59 L. Ed. 1204 (1915), upheld a state statute requiring railroads to construct transverse openings in roadbeds to drain surface waters, even though the roadbed in question was constructed and in use long before the effective date of the statute. The Court pointed out that the railroad was not being penalized for the manner of the construction of the roadbed but because it maintained the embankment on the right-of-way in a manner prohibited by the act. So here, the purpose of the proceeding is not to penalize defendant for the land-disturbing activities, but to proscribe the continuing erosion and siltation from the property.

Similar results were reached in *Samuels v. McCurdy*, 267 U.S. 188, 69 L. Ed. 568 (1925) (continued possession of liquor after passage of statute prohibiting possession); *Lewis v. Fidelity Co.*, 292 U.S. 559, 78 L. Ed. 1425, 92 A.L.R. 794 (1934) (bank bond required by statute held to secure subsequent deposits, holding a state statute is not retroactive merely because it draws upon antecedent facts for its operation); *Reynolds v. United States*, 292 U.S. 443, 78 L. Ed. 1353 (1934) (statute preventing deductions from veterans' pensions for hospital costs); and *People v. Jones*, 329 Ill. App. 503, 69 N.E.2d 522 (1946) (statute requiring plugging of abandoned oil wells).

Were we to adopt defendant's argument, it would create a "grandfather clause" effectively eliminating from regulation all erosion in progress prior to the effective date of the act and continuing thereafter. Such aberrant result cannot survive the declared policy of the legislation.

We hold the learned trial judge erred in entering the summary judgment for defendant, and it is

Reversed.

Judges WEBB and WHICHARD concur.