IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-750

Filed 17 October 2023

Harnett County, No. 21 CVS 2156

HARNETT COUNTY BOARD OF EDUCATION, Petitioner,

v.

RETIREMENT SYSTEMS DIVISION, DEPARTMENT OF STATE TREASURER, Respondent.

Appeal by Petitioner from Order entered 30 June 2022 by Judge James M. Webb in Harnett County Superior Court. Heard in the Court of Appeals 13 February 2023.

> *Tharrington Smith, L.L.P., by Deborah R. Stagner and Patricia R. Robinson, for Petitioner-Appellant.*
>
> *Attorney General Joshua H. Stein, by Solicitor General Ryan Y. Park and Special Deputy Attorney General Olga E. Vysotskaya de Brito, for Respondent-Appellee.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Harnett County Board of Education (Harnett BOE) appeals from an Order entered by the Superior Court on judicial review affirming the Final Decision of the Administrative Law Judge (ALJ) granting Summary Judgment in favor of the Retirement Systems Division, Department of State Treasurer (Retirement System). The Retirement System manages the Teachers' and State Employees' Retirement

System (TSERS), which pays eligible retired teachers and state employees a fixed monthly pension calculated by a statutory formula which includes the retiree's four highest-earning consecutive years of state employment. The Final Decision in this case upheld an assessment against Harnett BOE for an additional contribution to the Retirement System to fund a pension for one of Harnett BOE's retired employees pursuant to anti-pension-spiking legislation (Contribution-Based Benefit Cap Act or the Act) applicable to TSERS.

The backdrop of this case is the Opinion of the Supreme Court of North Carolina—and preceding litigation—in *Cabarrus Cnty. Bd. of Educ. v. Dep't of State Treasurer*, 374 N.C. 3, 839 S.E.2d 814 (2020) (the Cabarrus County litigation). There, our Supreme Court described the Contribution-Based Benefit Cap Act:

> In 2014, the General Assembly enacted An Act to Enact Anti-Pension-Spiking Legislation by Establishing a Contribution-Based Benefit Cap, S.L. 2014-88, § 1, 2014 N.C. Sess. Laws 291, which is codified, in pertinent part, at N.C.G.S. § 135-5(a3). The Act establishes a retirement benefit cap applicable to certain employees with an average final compensation of $100,000 or more per year whose retirement benefit payment would otherwise be significantly greater than the contributions made by that retiree during the course of his or her employment with the State. *Id.* In order to calculate the benefit cap applicable to each retiree, the Act directs the Retirement System's Board of Trustees to "adopt a contribution-based benefit cap factor recommended by the actuary, based upon actual experience, such that no more than three-quarters of one percent (0.75%) of retirement allowances are expected to be capped" and to calculate the contribution-based benefit cap for each retiring employee by converting the employee's total contributions to the Retirement System to a single life annuity and multiplying the cost of such an annuity by the cap factor. *Id.* In the event that the retiree's

expected pension benefit exceeds the calculated contribution-based benefit cap, the Retirement System is required to "notify the [retiree] and the [retiree's] employer of the total additional amount the [retiree] would need to contribute in order to make the [retiree] not subject to the contribution-based benefit cap." N.C.G.S. § 135-4(jj) (2019). At that point, the retiree is afforded ninety days from the date upon which he or she received notice of the additional payment amount or the date of his or her retirement, "whichever is later, to submit a lump sum payment to the annuity savings fund in order for the [R]etirement [S]ystem to restore the retirement allowance to the uncapped amount." *Id.* The retiree's employer is entitled to "pay[ ] all or part of the . . . amount necessary to restore the [retiree's] retirement allowance to the pre-cap amount." *Id.*

*Id.* at 4-5, 839 S.E.2d at 815-16. While the Act applies to retirements occurring on or after 1 January 2015, relevant to this appeal, the Act further provides that for retirees who became members of TSERS prior to 1 January 2015, however, the retiree's pension will not be capped; instead, the retiree's last employer must contribute the amount "that would have been necessary in order for the retirement system to restore the member's retirement allowance to the pre cap amount." N.C. Gen. Stat. §§ 135-5(a3); 135-8(f)(2)(f).

Here, Harnett BOE's employee retired in February 2017 and had become a member of TSERS prior to January 2015. There appears to be no dispute in the Record that the Act applies to this retirement. At the time, the Retirement System was using a cap factor of 4.5 to calculate the contribution-based benefit cap, which in turn was used to calculate the additional contribution assessed to Harnett BOE. On 19 April 2017, the Retirement System sent a notice to Harnett BOE requiring

payment of $197,805.61 as the additional contribution required to fund Harnett BOE's employee's pension. Harnett BOE paid the assessment in full.

The Cabarrus County litigation began in 2016 when Cabarrus County Board of Education along with several other Boards of Education filed administrative challenges to the validity of cap factors adopted in 2014 and 2015, including the 4.5 cap factor utilized to calculate the 2017 assessment to Harnett BOE. The Boards argued the cap factors were invalid because they had not been adopted through the rule-making process required by the North Carolina Administrative Procedure Act (APA). After a final agency decision against the Cabarrus County Board, the Board petitioned for judicial review, and in May 2017, a Superior Court declared the cap factors invalidly adopted. *See id.*

In the wake of the Superior Court decision, the Retirement System initiated the formal rule-making process to adopt a cap factor in December 2017. After holding a public hearing in January 2018 and receiving written comments on the proposed cap-factor rule, at a 7 March 2018 meeting, the Retirement System's Board of Trustees adopted the cap-factor rule, again setting the cap factor at 4.5. The administrative rule was codified at 20 NCAC 02B .0405 (Cap-Factor Rule).[1]

---

[1] Shortly after adoption of the Cap-Factor Rule, the General Assembly amended the statute to expressly make clear the cap-factor calculation was not subject to the rule-making provisions of the APA. *See* 2021 N.C. Sess. Laws ch. 70 § 3.2. However, for purposes of this appeal, the parties appear in agreement that amendment does not apply to this case and that the Supreme Court's decision in the Cabarrus County litigation remains controlling. The Cap-Factor Rule itself has been repealed.

Meanwhile, the Cabarrus County litigation continued. On 18 September 2018, this Court issued its Opinion affirming the Superior Court holding that the rule-making provisions of the APA applied to the adoption of cap factors and, thus, assessments made using a cap factor adopted outside of the rule-making process were invalid. *Cabarrus Cnty. Bd. of Educ. v. Dep't of State Treasurer*, 261 N.C. App. 325, 345, 821 S.E.2d 196, 210 (2018). The Supreme Court of North Carolina subsequently affirmed our Court and the trial court in 2020. *Cabarrus Cnty. Bd.*, 374 N.C. 3, 839 S.E.2d 814.

Following this Court's decision in the Cabarrus County litigation, Harnett BOE sought a refund of the 2017 assessment. In October 2020, a Wake County Superior Court ordered the Retirement System to issue a refund to Harnett BOE. On 16 December 2020, however, the Retirement System sent a new invoice notifying Harnett BOE that it again owed $197,805.61 to fund the retirement of its employee. This time the Retirement Division relied on the 4.5 cap factor it had adopted in 2018. Harnett BOE submitted a request to the Retirement System demanding withdrawal of the new assessment, contending it constituted improper retroactive application of the 2018 Cap-Factor Rule to the 2017 retirement. In February 2021, the Retirement System issued a Final Agency Decision rejecting Harnett BOE's demand.

Harnett BOE then filed a Contested Case Petition in the Office of Administrative Hearings. On 10 September 2021, an ALJ denied the Board's Motion for Summary Judgment and granted Summary Judgment to the Retirement System.

- 5 -

The ALJ concluded the 2018 Cap-Factor Rule was properly applied retroactively to retirements occurring after 1 January 2015 consistent with the purpose of the Contribution-Based Benefit Cap Act and specifically N.C. Gen. Stat. § 135-5(a). The ALJ also concluded the 2018 Cap-Factor Rule was adopted in substantial compliance with the requirements for adopting a rule under the APA.

On 11 October 2021, Harnett BOE filed a Petition for Judicial Review in Harnett County Superior Court, seeking a declaratory ruling that (1) "20 NCAC 02B .0405 is void and of no effect because of the failure of the . . . [Retirement System] Board of Trustees to comply with the requirement of Chapter 150B of the North Carolina General Statutes"; (2) "[Retirement System]'s assessment against the Board in the amount of $197,805.61 is void and unenforceable because 20 NCAC 02B .0405 was not lawfully adopted"; (3) 20 NCAC 02B .0405 may not be applied retroactively to assess additional amounts for retirements that occurred prior to March 21, 2019"; and (4) [Retirement System]'s assessment against the Board in the amount of $197,805.61 is void and unenforceable because [Retirement System] improperly applied 20 NCAC 02B .0405 retroactively."

On 13 June 2022, the Superior Court heard arguments by both parties on the Petition for Judicial Review. On 30 June 2022, the Superior Court entered an Order affirming the final decision of the ALJ. Petitioner timely filed Notice of Appeal on 28 July 2022.

## Issues

The issues on appeal are whether: (I) the Retirement System substantially complied with the rule-making requirements of the APA in adopting the Cap-Factor Rule; and (II) the Cap-Factor Rule was properly applied to retroactively calculate the amount Harnett BOE owed to fund its employee's retirement under the Contribution-Based Benefit Cap Act.

## Analysis

"The North Carolina Administrative Procedure Act (APA), codified at Chapter 150B of the General Statutes, governs trial and appellate court review of administrative agency decisions." *Amanini v. N.C. Dep't of Hum. Res.*, 114 N.C. App. 668, 673, 443 S.E.2d 114, 117 (1994). The APA provides a party aggrieved by a final decision of an ALJ in a contested case a right to judicial review by the superior court. N.C. Gen. Stat. § 150B-43 (2021). A party to the review proceeding in superior court may then appeal from the superior court's final judgment to the appellate division. N.C. Gen. Stat. § 150B-52 (2021). The APA sets forth the scope and standard of review for each court.

The APA limits the scope of the superior court's judicial review as follows:

> (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the

- 7 -

agency or administrative law judge;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2021). The APA also sets forth the standard of review to be applied by the superior court as follows:

> (c) In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record. With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) of this section, the court shall conduct its review of the final decision using the de novo standard of review. With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review.

N.C. Gen. Stat. § 150B-51(c) (2021).

"The scope of review to be applied by the appellate court under [the APA] is the same as it is for other civil cases." N.C. Gen. Stat. § 150B-52 (2021). "Thus, our appellate courts have recognized that '[t]he proper appellate standard for reviewing a superior court order examining a final agency decision is to examine the order for errors of law.'" *EnvironmentaLEE v. N.C. Dep't of Env't & Nat. Res.*, 258 N.C. App. 590, 595, 813 S.E.2d 673, 677 (2018) (quoting *Shackleford-Moten v. Lenoir Cnty. Dep't*

*of Soc. Servs.*, 155 N.C. App. 568, 572, 573 S.E.2d 767, 770 (2002)). "Our appellate courts have further explained that 'this "twofold task" involves: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' " *Id.* (quoting *Hardee v. N.C. Bd. of Chiropractic Exam'rs*, 164 N.C. App. 628, 633, 596 S.E.2d 324, 328 (2004) (citations and quotation marks omitted)). "As in other civil cases, we review errors of law de novo." *Hilliard v. N.C. Dep't of Corr.*, 173 N.C. App. 594, 596, 620 S.E.2d 14, 17 (2005).

In this case, consistent with N.C. Gen. Stat. § 150B-34(e), the ALJ granted Summary Judgment for the Retirement System. *See* N.C. Gen. Stat. § 150B-34(e) (2021). The superior court, in turn, reviewing the ALJ's decision to grant Summary Judgment applied a de novo standard of review and determined Summary Judgment was properly entered for the Retirement System. *See* N.C. Gen. Stat. § 150B-51(d) (2021).

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2021). "On appeal, this Court reviews an order granting summary judgment de novo." *Cabarrus Cnty.*, 261 N.C. App. at 329, 821 S.E.2d at 200 (citation and quotation marks omitted). Findings of fact and conclusions of law are not required in an order granting summary

judgment, and " '[i]f the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal. If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered.' " *Id.* (quoting *Save Our Schs. of Bladen Cnty. v. Bladen Cnty. Bd. of Educ.*, 140 N.C. App. 233, 237-38, 535 S.E.2d 906, 910 (2000)).

I.  Substantial Compliance with Rule-Making Requirements.

Harnett BOE argues the Superior Court erred in affirming the ALJ's grant of Summary Judgment on the question of whether the Retirement System validly adopted the Cap-Factor Rule as required by our Supreme Court in the Cabarrus County litigation. Specifically, Harnett BOE contends the Retirement System—in adopting the Cap-Factor Rule—failed to substantially comply with the rule-making provisions of the APA.

The purpose of the APA is to establish "a uniform system of administrative rule making and adjudicatory procedures for agencies." N.C. Gen. Stat. § 150B-1(a) (2021). Article 2A of the APA governs the requirements for agency rule-making. *See* N.C. Gen. Stat. § 150B-18, *et seq.* "A rule is not valid unless it is adopted in substantial compliance with this Article [2A]." N.C. Gen. Stat. § 150B-18 (2021). "The necessary procedures for substantial compliance are outlined in G.S. § 150B-21.2[.]" *Jackson v. N.C. Dep't of Hum. Res.*, 131 N.C. App. 179, 184, 505 S.E.2d 899, 902 (1998).

N.C. Gen. Stat. § 150B-21.2(a) provides:

> Before an agency adopts a permanent rule, the agency must comply with the requirements of G.S. 150B-19.1, and it must take the following actions:
>
> (1) Publish a notice of text in the North Carolina Register.
>
> (2) When required by G.S. 150B-21.4, prepare or obtain a fiscal note for the proposed rule.
>
> (3) Repealed by S.L. 2003-229, § 4, eff. July 1, 2003.
>
> (4) When required by subsection (e) of this section, hold a public hearing on the proposed rule after publication of the proposed text of the rule.
>
> (5) Accept oral or written comments on the proposed rule as required by subsection (f) of this section.

N.C. Gen. Stat. § 150B-21.2(a) (2021). In this case, Harnett BOE asserts the Retirement System acted contrary to these statutory mandates by: (A) failing to comply with Section 150B-21.2(a)(2) by, in turn, failing to comply with the requirements of Section 150B-21.4 concerning the fiscal note; and (B) failing to comply with the requirements of Section 150B-19.1 related to consideration of the burdens imposed by the proposed rule and alternatives to the proposed rule.

*A.     Fiscal Note Requirements*

Relevant to this case, N.C. Gen. Stat. § 150B-21.4 provides:

> Before an agency publishes in the North Carolina Register the proposed text of a permanent rule change that would have a substantial economic impact and that is not identical to a federal regulation that the agency is required to adopt, the agency shall prepare a fiscal note for the proposed rule change and have the

note approved by the Office of State Budget and Management.

N.C. Gen. Stat. Ann. § 150B-21.4 (2021).  A substantial economic impact is an "aggregate financial impact on all persons affected of at least one million dollars . . . in a 12-month period."  N.C. Gen. Stat. § 150B-21.4(b1) (2021).  N.C. Gen. Stat. § 150B-21.4(b1) further provides:

> In analyzing substantial economic impact, an agency shall do the following:
>
> (1) Determine and identify the appropriate time frame of the analysis.
>
> (2) Assess the baseline conditions against which the proposed rule is to be measured.
>
> (3) Describe the persons who would be subject to the proposed rule and the type of expenditures these persons would be required to make.
>
> (4) Estimate any additional costs that would be created by implementation of the proposed rule by measuring the incremental difference between the baseline and the future condition expected after implementation of the rule.  The analysis should include direct costs as well as opportunity costs.  Cost estimates must be monetized to the greatest extent possible.  Where costs are not monetized, they must be listed and described.
>
> (5) For costs that occur in the future, the agency shall determine the net present value of the costs by using a discount factor of seven percent (7%).

N.C. Gen. Stat. § 150B-21.4(b1) (2021).

Here, there is no dispute that during the rule-making process the Retirement System determined the proposed Cap-Factor Rule would have a substantial economic

impact. There is also no dispute the Retirement System did, in fact, prepare a Fiscal Note in accordance with Section 150B-21.4. Likewise, there is no dispute the Fiscal Note was, in fact, approved by the Office of State Budget and Management.

Harnett BOE, however, specifically argues the Retirement System failed to substantially comply with Section 150B-21.4(b1)(3) by failing to identify "the persons who would be subject to the proposed rule and the type of expenditures these persons were required to make." Harnett BOE asserts the Retirement System failed to consider the impact of the proposed Cap-Factor Rule on individual school systems or, indeed, any individual employer. Harnett BOE, however, cites no authority in specific support of its argument.

Indeed, to the contrary, the Fiscal Note prepared by the Retirement System—and approved by the Office of State Budget and Management—acknowledges the contribution-based benefit cap requirement of the anti-pension spiking statute impacts—and protects—all employing public agencies participating in TSERS. The Note "estimates spiking employers will pay $73.6 [million] to the Retirement Systems over 15 years in additional employer contributions . . . while all employers that do not incur additional contributions . . . will avoid bearing a pro-rata share in present value terms of the unforeseen liabilities that these additional contributions serve to offset."

Moreover, the Fiscal Note further expressly acknowledges types of employing agencies subject to the cap including school systems, the UNC system, local governments, community colleges, and state agencies. The Note further recognizes

"school systems had incurred $2.8 million by the end of 2016, or 41% of all CBBC liabilities, the largest share among agencies affected by the legislation." Indeed, the Note also recognizes the Cabarrus County litigation and that, specifically, the four school boards involved in the litigation had been invoiced for a total of $1.8 million incurred from five retirements. Additionally, the Note contemplates the potential impact, not just on the employers, but member-employees, including identifying specific types of employees covered by the Retirement System. As such, we conclude the Retirement System's Fiscal Note is in substantial compliance with N.C. Gen. Stat. § 150B-21.4(b1)(3).

### B. Burden Imposed and Consideration of Alternatives

Harnett BOE also contends the Retirement System's rule-making process for the Cap-Factor Rule was contrary to two requirements of N.C. Gen. Stat. § 150B-19.1. This Section sets forth a number of requirements an agency must follow when drafting and adopting a proposed administrative rule. N.C. Gen. Stat. § 150B-19.1(a) provides:

> (a) In developing and drafting rules for adoption in accordance with this Article, agencies shall adhere to the following principles:
>
> (1) An agency may adopt only rules that are expressly authorized by federal or State law and that are necessary to serve the public interest.
>
> (2) An agency shall seek to reduce the burden upon those persons or entities who must comply with the rule.
>
> (3) Rules shall be written in a clear and unambiguous manner

and must be reasonably necessary to implement or interpret federal or State law.

(4) An agency shall consider the cumulative effect of all rules adopted by the agency related to the specific purpose for which the rule is proposed. The agency shall not adopt a rule that is unnecessary or redundant.

(5) When appropriate, rules shall be based on sound, reasonably available scientific, technical, economic, and other relevant information. Agencies shall include a reference to this information in the notice of text required by G.S. 150B-21.2(c).

(6) Rules shall be designed to achieve the regulatory objective in a cost-effective and timely manner.

N.C. Gen. Stat. § 150B-19.1(a) (2021). Further relevant to this case, N.C. Gen. Stat. § 150B-19.1(f) requires: "If the agency determines that a proposed rule will have a substantial economic impact as defined in G.S.[§] 150B-21.4(b1), the agency shall consider at least two alternatives to the proposed rule. The alternatives may have been identified by the agency or by members of the public." N.C. Gen. Stat. § 150B-19.1(f) (2021).

First, Harnett BOE argues the Retirement System acted contrary to Section 150B-19.1(a)(2) by failing to seek to reduce the burden on those entities who must comply with the Cap-Factor Rule. Specifically, Harnett BOE asserts the Retirement System failed to consider the burden imposed on individual school systems. Harnett BOE cites no specific authority to support its contention that the Retirement System was required to consider the particular impact to every individual school system or entity impacted by the proposed Cap-Factor Rule.

However, the Fiscal Note itself illustrates the Retirement System was grappling with its duty to carry out a statutory mandate, reduce system-wide costs caused by alleged pension-spiking, thus, reducing costs across all impacted agencies and retirees (particularly those not engaged in alleged pension-spiking), and striking a balance by adopting a cap-factor that resulted in a Contribution-Based-Benefit Cap was neither underinclusive nor overinclusive. Again, the Retirement System did acknowledge the anti-pension-spiking legislation had had a greater impact on school systems compared to other agencies. Indeed, as the Retirement System explained through affidavits submitted below and in briefing to this Court, there is simply a tension in adopting a cap-factor between maximizing the effectiveness of the Contribution-Based Benefit Cap Act—with the goal of decreasing the likelihood of higher system-wide employer contributions—and minimizing the burden on specific employers subject to the Act.[2] The Retirement System's analysis, as demonstrated throughout the Fiscal Note, attempts to balance its obligation to reduce the burdens on all agencies and members system-wide with its obligation to fulfill the statutory mandates of the Act. In so doing, the Retirement System relied on the same actuarial information and presentations from consultants used to determine the original 2015

---

[2] As a general proposition, adoption of a higher value for the cap factor results in fewer pensions being subject to capping—with the commensurate potential increase in system-wide employer contributions being required—while a lower cap factor would result in more pensions being subject to the cap increasing the burden on individual employers and/or retirees.

cap-factor prior to the Cabarrus County litigation. Harnett BOE cites no authority for the proposition this information was improperly considered or that this data was erroneous or invalid. As such, we conclude the Retirement System substantially complied with Section 150B-19.1(a)(2).

Second, and relatedly, Harnett BOE argues the Retirement System failed to comply with Section 150B-19.1(f) by failing to consider at least two alternatives to the cap factor of 4.5. However, the Retirement System—as evidenced both in the data and presentations it considered along with the Fiscal Note—plainly did consider the potential impacts of different values for the cap-factor. The Retirement System considered cap-factors ranging from 4.1 to 5.0. Thus, the Retirement System substantially complied with N.C. Gen. Stat. § 150B-19.1(f).

II.   Application of the Cap-Factor Rule

Harnett BOE further contends the 2018 Cap-Factor Rule was impermissibly applied retroactively to the 2017 retirement of its employee. Harnett BOE argues the intent of the Contribution-Based Benefit Cap Act was not to apply to all applicable retirements occurring after 1 January 2015 but only those occurring after a validly-adopted Cap-Factor Rule became effective. Thus, Harnett BOE asserts—because of the Cabarrus County litigation—there was no validly-adopted cap factor in 2017 when its employee retired. Therefore, Harnett BOE argues it should not be subject to the additional contribution for its retired employee in this case at all.

"A statute will not be construed to have retroactive effect unless that intent is

- 17 -

clearly expressed or arises by necessary implication from its terms." *In re Mitchell's Will*, 285 N.C. 77, 79-80, 203 S.E.2d 48, 50 (1974). "A statute is not necessarily unconstitutionally retroactive where its application depends in part upon a fact that antedates its effective date. The proper question for consideration is whether the act as applied will interfere with rights which had vested or liabilities which had accrued at the time it took effect." *State ex rel. Lee v. Penland-Bailey Co., Inc.*, 50 N.C. App. 498, 503, 274 S.E.2d 348, 352 (1981).

This Court, in a related matter, recently held:

> Here, the Act provides that "every service retirement allowance . . . for members who retire on or after January 1, 2015, is subject to adjustment pursuant to a contribution-based benefit cap[.]" N.C. Gen. Stat. § 135-5(a3). The Act further provides that "the retirement allowance of a member who became a member before January 1, 2015 . . . shall not be reduced; however, the member's last employer . . . shall be required to make an additional contribution[.]" *Id.* The plain language of the Act indicates that it applies to any retirement allowance for a member who retires on or after 1 January 2015.

*Wilson Cnty. Bd. of Educ. v. Ret. Sys. Div.*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (COA22-1027, filed Aug. 15, 2023). There, we concluded: "Because the employee in this case retired on 1 January 2018, three years after Act took effect, the statute was not retroactively applied to Petitioner." *Id.*

In this case, Harnett BOE's employee retired in 2017, after the 1 January 2015 effective date of the Act. Therefore, by its plain language, the Act applied to the retirement at issue in this case. Thus, there was no retroactive application of the

Contribution-Based Benefit Cap Act in this case.

Nevertheless, Harnett BOE contends even if the Act theoretically applies to all retirements occurring after 1 January 2015, the Cap-Factor Rule itself cannot be applied to retirements occurring before its effective date in 2019. Harnett BOE posits this is so because retroactive application of the Cap-Factor Rule would impair Harnett BOE's vested right by interfering with liabilities which had accrued at the time the Cap-Factor Rule took effect. *See Penland-Bailey*, 50 N.C. App. at 503, 274 S.E.2d at 352. Specifically, Harnett BOE asserts that in the absence of a valid cap factor at the time of the 2017 retirement, it could not have known, at that time, either whether its employee's retirement would be subject to the cap or, if so, the amount of its liability.

Harnett BOE's argument fails. Here, again, by its plain language, the Contribution-Based Benefit Cap Act applies to "every service retirement allowance . . . for members who retire on or after January 1, 2015," and makes plain those retirement allowances are "subject to adjustment pursuant to a contribution-based benefit cap[.]" N.C. Gen. Stat. § 135-5(a3) (2021). It further provides that upon the retirement of any employee who became a TSERS member prior to 2015, the employer would be liable for the additional contribution. *Id.*

Here, the Retirement System—by adopting the Cap-Factor Rule and calculating the additional contribution owed by Harnett County BOE for the 2017 retirement—was simply carrying out the statutory mandate of the Contribution-

Based Benefit Cap Act. Harnett County BOE was on notice of the Act and on notice that it would apply to determine whether the retirement of its employee in 2017 would be subject to a cap. Harnett BOE's argument that the Retirement System's calculation of the assessment of the additional contribution following adoption of the Cap-Factor Rule interfered with an already accrued liability does not follow. No liability accrued until the Retirement System—applying a valid cap factor—calculated and invoiced the additional contribution owed as required under the statute.[3]

This Court's prior decision in *State ex rel. Commissioner of Insurance v. North Carolina Rate Bureau* is instructive here. There, after this Court had previously vacated an order setting new vehicle insurance rates effective 1 January 1995 and remanded the matter to the Commissioner to set new rates, the Commissioner did so by an order entered in 1997 but made effective 1 January 1995. *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 131 N.C. App. 874, 875-76, 508 S.E.2d 836, 836-37 (1998), *review allowed in part and remanded*, 350 N.C. 850, 539 S.E.2d 10 (1999), and *review allowed in part and remanded*, 543 S.E.2d 482 (1999).

In that case, we acknowledged "the general principle that retroactive rate making is improper." *Id.* at 876, 508 S.E.2d at 837. Nevertheless, we further

---

[3] Harnett BOE contends this leads to an absurd result in which the Retirement System may simply and continuously retroactively change the cap factor to apply to post-2015 retirements. However, now that a cap factor has been adopted and applied to those retirements, particularly the one at issue here, the liability has accrued.

concluded: "The recalculation of rates, however, pursuant to a remand order of an appellate court and the application of those rates back to the effective date of the Order reversed on appeal does not constitute unlawful retroactive rate making." *Id*. We further observed:

> To hold otherwise essentially would bind the parties, for a period of time between the entry of the appealed Order and the rehearing on remand pursuant to the appellate court, to a rate declared invalid by the appellate court. This cannot represent sound public policy, and, furthermore, is inconsistent with the purpose of the remand order, which is to correct the error requiring the remand.

*Id*.

Likewise, here, given the statutory mandate that the contribution-based benefit cap apply to every retirement after 1 January 2015, the Retirement System was required to calculate and apply a contribution-based benefit cap to those retirements occurring after that effective date. Following the Cabarrus County litigation which declared the cap factor invalid, the Retirement System was required to validly adopt a cap-factor through rule-making and apply it as required by statute to those retirements occurring after 1 January 2015—including the one at issue here. To conclude otherwise would not represent sound public policy—as it would undermine the purpose and express language of the statute to exclude retirements between 2015 and the 2019 effective date of the Cap-Factor Rule from application of the statute. Likewise, applying an invalidly adopted cap factor would be inconsistent with the judicial mandates from the Cabarrus County litigation, including from our

Supreme Court. *See id.* As such, we conclude application of the Cap-Factor Rule to calculate the additional contribution owed by Harnett BOE in this case does not constitute an impermissible retroactive application of the cap-factor in this case.

Thus, the Retirement System substantially complied with the rule-making requirements of the APA in adopting the Cap-Factor Rule, and the Rule is properly applied to the retirement of Harnett County's employee in this case. Therefore, the ALJ properly granted Summary Judgment to the Retirement System. Consequently, the Superior Court, correctly applying a de novo review, did not err by affirming the ALJ's Final Decision.

## Conclusion

Accordingly, for the foregoing reasons, we affirm the Superior Court's Order entered 30 June 2022 affirming the Final Decision of the ALJ.

AFFIRMED.

Judges MURPHY and STADING concur.